IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | ) CRIMINAL NO. 17-274 |
| | ) |
| | ) SENIOR JUDGE JOY FLOWERS CONTI |
| | ) |
| vs. | ) |
| | ) |
| **MICHAEL GINYARD, JR.**, | ) |
| | ) |
| Defendant, | ) |

**MEMORANDUM OPINION**

Pending before the court are two motions filed on the docket by pro se defendant Michael Ginyard ("Ginyard"): (1) a motion to hold Ginyard's former CJA-appointed attorney, Patrick Livingston ("Livingston"), in contempt of court (ECF No. 141); and (2) a motion for discovery (ECF No. 142), with brief in support (ECF No. 143). Responses were filed in opposition to both motions (ECF Nos. 147, 148). Ginyard filed a reply brief (ECF No. 151). The motions are ripe for disposition.

Procedural History

On February 28, 2019, Ginyard pleaded guilty to counts 1, 3, 4 and 5 of the indictment at Crim. No. 17-274 (Count 1: Possession with Intent to Distribute Heroin and/or Fentanyl; Count 3: Attempt to Distribute Heroin; Count 4: Possession with Intent to Distribute Heroin and/or Fentanyl; Count 5: Possession of a Firearm in Furtherance of a Drug Trafficking Crime). The sentencing hearing has been postponed numerous times. On April 6, 2022, the court granted

Ginyard's pro se motion to continue the sentencing hearing and it is now scheduled for July 6, 2022.[1]

On February 23, 2022, after extensive proceedings (and appointment of a separate CJA attorney for the specific purpose of consulting with Ginyard about his intent to proceed pro se and to attempt to withdraw his guilty plea), the court granted Ginyard's motion to terminate the representation of his CJA attorneys and allowed him to proceed pro se. The court found that Ginyard's decision and his waiver of his right to counsel were knowing and voluntary. The court granted Ginyard's request that a different attorney be appointed as standby counsel.

At the conclusion of the hearing on February 23, 2022, Ginyard raised an issue about certain documents. Livingston provided copies of the documents at issue to Ginyard at the hearing and represented that he would retain the original documents unless subpoenaed. Livingston also represented he would cooperate with Ginyard and standby counsel to provide any other discovery not already in Ginyard's possession. *See* Transcript.

Motion for discovery

Ginyard seeks additional discovery "to adequately develop and prepare [his] defense." (ECF No. 142 at 1). Ginyard seeks: (a) information exchanged between federal agents and police departments or state agents about him; (b) information exchanged between ATF agents and state agents about him; (c) the 911 dispatch transcripts; (d) evidence logs and chain of custody records; and (e) reports of any investigation about the authenticity of the search warrant for 6942 McPherson Boulevard and whether Magisterial District Judge Thomas Brletic sat in Pittsburgh Municipal Court on January 15, 2017. As authority to obtain this discovery, Ginyard

---

[1] On February 23, 2022, the court granted Ginyard's request for an extension of time until April 6, 2022, to file a motion to withdraw his guilty pleas. (Minute Entry Feb. 23, 2022). Ginyard did not file a motion to withdraw his guilty pleas by that date.

cited Federal Rule of Criminal Procedure 16(c) and (d). He contends that the district court has discretion to order discovery beyond the scope of *Brady v. Maryland*, 373 U.S. 83 (1973), and the Jencks Act, 18 U.S.C. § 3500. Ginyard did not specifically explain why each part of the requested discovery was relevant and necessary to develop and prepare his defense.

The government opposes any additional discovery. The government represents that much, if not all, the information Ginyard requests was already provided, or does not exist. The government also represents that it fully complied with Rule 16.[2] The government did not directly respond to each category of information requested by Ginyard. More fundamentally, the government contends that the discovery being sought is not relevant to sentencing and is not appropriate at this stage of the case. (ECF No. 148).

The court concludes that Ginyard is not entitled to discovery at this time. There is no need to "prepare a defense" because Ginyard already pleaded guilty to the offenses charged at counts 1, 3, 4 and 5 of the indictment. In addition, the final presentence report ("PIR") and addendum were prepared (ECF Nos. 72, 75) and Ginyard had an opportunity to object to the facts and guidelines calculation set forth in the PIR, but did not do so. (*See* Defendant's Sentencing Memorandum ECF No. 79). The court issued its Tentative Findings and Rulings ("TFRs") with respect to the advisory guideline calculation almost 3 years ago, in July 2019 (ECF No. 80).

In *United States v. Sepling*, No. 3:11-CR-0195, 2012 WL 1356714 (M.D. Pa. Apr. 19, 2012), the court denied a similar request for discovery at the sentencing phase of the case. The court explained that the government had "no obligation to provide Defendant with a calculation regarding his possible sentencing range, or to turn over any information that might potentially

---

2 The court notes that Local Criminal Rule 16(c) imposes on the government a continuing duty to notify the defendant of the existence of exculpatory evidence. *United States v. Turner*, No. 2:11-CR-197, 2012 WL 832884, at *1 (W.D. Pa. Mar. 12, 2012).

bear upon the calculation of Defendant's sentence under the Sentencing Guidelines." *Id.* at *4 (*quoting United States v. Robinson*, No. 05‑cr‑443, 2007 WL 790013, at *10 (M.D. Pa. Mar.14, 2007) (in which the court observed it was aware of no rule requiring the government to produce such discovery).

Ginyard's reliance on Federal Rule of Criminal Procedure 16(c) and (d) is misplaced. Rule 16(c) provides that "[a] party who discovers additional evidence or material **before or during trial** must promptly disclose its existence to the other party." Fed. R. Crim. P. 16(c) (emphasis added). Rule 16(d) confirms the court's authority to regulate discovery, including the court's ability to deny, restrict, or defer discovery for good cause. It is well-established that there is no general constitutional right to discovery in a criminal case. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *but see Brady*, 373 U.S. at 83 (government has duty to disclose exculpatory information). The court is aware of no rule that would require the government to produce the discovery sought in Ginyard's motion.

In summary, Ginyard's motion for discovery will be denied.

Motion for Criminal Contempt

Ginyard asks the court to hold Livingston in criminal contempt of court pursuant to Federal Rule of Criminal Procedure 17(g) for failure to comply with a subpoena. Rule 17(g) provides, in relevant part: "(g) Contempt. The court (other than a magistrate judge) may hold in contempt a witness who, **without adequate excuse, disobeys** a subpoena issued by a federal court in that district." Fed. R. Crim. P. 17(g) (emphasis added). In his reply brief, Ginyard suggests that the court must evaluate Livingston's credibility (ECF No. 151 at 2). The court

concludes that an evidentiary hearing is not necessary because the existing record is sufficiently developed to decide the criminal contempt motion.

The subpoena at issue sought, among other things, the original copy of the inventory sheet for a search warrant for 6942 McPherson Boulevard, Pittsburgh, Pa. Livingston retrieved that document from the home of Louanette Williams (Ginyard's grandmother) on August 4, 2021 (ECF No. 141-2). Ginyard submitted an exchange of messages between Livingston and Danielle Crawford ("Crawford"), to whom Ginyard provided a power of attorney to obtain the document. Livingston stated on March 14, 2022, that he would have an envelope waiting for Crawford at his office (ECF No. 141-3). Upon Ginyard's examination, the envelope contained a scanned copy, not the original, of the inventory sheet.[3]

In his response to the contempt motion, Livingston acknowledged receiving the subpoena and having possession of the original document as recently as mid-to-late February 2022 (ECF No. 147). Livingston explained that after he received the subpoena, he located other original copies of the McPherson Boulevard search documents in the Ginyard case file, but he could not find the original copy of the inventory sheet. (ECF No. 147 at 2). Livingston produced the other original documents in response to the subpoena, but produced a copy of the inventory sheet because he could not find the original. *Id.* The copy was produced from a scanned version of the original. *Id.* Livingston represented that he would continue to search for the original. *Id.* Livingston argues that the motion for criminal contempt should be denied because he does not have possession of the document; he is not recalcitrant or acting in defiance of the court's authority; and he acted reasonably by producing available documents despite the existence of grounds to challenge the subpoena (ECF No. 147 at 3 & n.1).

---

[3] It is unclear to the court why the original inventory sheet, as opposed to a scanned copy of the original, is important to Ginyard's defense. To the court's knowledge, Ginyard never contested that the items listed on the inventory sheet were recovered during the search of 6942 McPherson Boulevard.

This court has adopted the Pennsylvania Rules of Professional Conduct, except Rule 3.10.  Local Rule 83.3(A).  When an attorney is admitted to this court, the attorney is deemed to have conferred disciplinary jurisdiction upon the court for any alleged misconduct arising in the course of a proceeding.  Local Rule 83.3(A)(4).  Pennsylvania Rule of Professional Conduct 3.3 imposes a duty of candor to the tribunal.  Rule 3.3(a)(1) provides that a lawyer shall not knowingly "make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."  http://www.padisciplinaryboard.org/for-attorneys/rules/rule/3/the-rules-of-professional-conduct#rule-167, last visited May 6, 2022.  This duty of candor applies "to all lawyers, including defense counsel in criminal cases."  *Id.* cmt. 7.  There is no basis on this record to conclude that Livingston's representations to the court about his search for the document and inability to find it are false.  Livingston has no obvious motive to withhold the document.

Criminal contempt is a serious matter.  The fundamental purpose of contempt sanctions "is to preserve respect for the judicial system itself."  *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 800 (1987).  Courts should exercise restraint and apply the "least possible power adequate to the end proposed."  *Id.* at 801.  A party facing criminal contempt charges is entitled to numerous procedural safeguards such as notice and a hearing, an independent prosecutor, the assistance of counsel, a prohibition on double jeopardy, the right to present a defense, the privilege against self-incrimination, and a jury trial.  *In re People*, 69 V.I. 769, 777 (2018) (citations omitted).  *See* Fed. R. Crim. P. 42; 18 U.S.C. § 401.  "A conviction for criminal contempt requires proof beyond a reasonable doubt showing the accused willfully and knowingly disobeyed 'a valid court order.'"  *United States v. Morton*, 993 F.3d 198, 207 (3d Cir. 2021) (quoting *In re Kendall*, 712 F.3d 814, 830 (3d Cir. 2013)).

Criminal contempt is a drastic sanction which is only appropriate if the target of the subpoena disobeys without adequate excuse. Fed. R. Crim. P. 17(g). There is no evidence that Livingston is disobeying a court order to produce the document. Instead, Livingston represents that he is willing to produce the document, but is unable to do so because it cannot be found. *See Nilva v. United States*, 352 U.S. 385, 392 (1957) ("[A] criminal contempt is committed by one who, in response to a subpoena calling for corporation or association records, **refuses to surrender them when they are in existence** and within his control.") (emphasis added; citations omitted). The Supreme Court explained in *Nilva* that a contempt sanction was appropriate in that case because the target did not assert "want of actual possession of the required records." *Id.* at 394. Here, Livingston represents that he longer possesses the document at issue. There is no assertion that Livingston willfully misplaced or destroyed the document or is otherwise defying the court's authority. On this record, no reasonable jury could find criminal contempt beyond a reasonable doubt. *See Xtreme Caged Combat v. ECC Fitness*, No. 12-CV-3855, 2019 WL 1245162, at *4 (E.D. Pa. Mar. 15, 2019) ("Where Defendant has made efforts to comply with Plaintiffs' post-judgment discovery requests, we DENY Plaintiffs' motion to hold Defendant in criminal contempt"); *Desai v. Doctor's Assocs. Inc.*, No. CIV. 08-3363 (WJM), 2008 WL 4661625, at *3 (D.N.J. Oct. 20, 2008) (denying motion for criminal contempt as "drastic sanction" and noting that criminal contempt may be maintained only with the court's approval) (*citing Latrobe Steel Co. v. United Steelworkers of America, AFL–CIO*, 545 F.2d 1336, 1343 (3d Cir.1976)).

In summary, the motion for criminal contempt (ECF No. 141) will be denied.

Conclusion

In accordance with the foregoing, the motion for discovery (ECF No. 142) will be denied and the motion for criminal contempt (ECF No. 141) will be denied.

An appropriate order follows.

Dated:  May 24, 2022            BY THE COURT:

                                /s/ Joy Flowers Conti
                                Judge Joy Flowers Conti
                                Senior United States District Judge